## MICHAEL KENNEDY *vs.* MICHAEL SHEA.

In an action for seducing the plaintiff's daughter, it appeared that she was employed by a third person, but that the plaintiff required her to spend a part of every Sunday at home, and that while there she did work for him. *Held,* that she was his servant, so that he could maintain the action.

At the trial of an action for seducing the plaintiff's daughter, the admission of evidence that she worked for her father after the seduction furnishes the defendant no ground of exception, if the judge instructed the jury that the plaintiff could not recover unless the relation of master and servant existed between him and his daughter at the time of seduction.

It is no objection to the maintenance of an action for seducing the plaintiff's daughter, that the sexual intercourse between the daughter and the defendant was had by force.

At the trial of an action to which the statute of limitations was a bar, unless the defendant had been away from the state between two and three years, a witness for the plaintiff testified that the defendant was away "two, three or four years, I could not exactly say how long." The defendant introduced no evidence as to the time of his absence. *Held,* that the jury were warranted in finding that the case was taken out of the statute of limitations.

TORT by trustee process for seducing Mary Kennedy, the plaintiff's minor daughter. Writ dated September 18, 1870.

At the trial in the Superior Court, before *Putnam*, J., the plaintiff introduced evidence tending to show that in January 1862 his daughter was living in the family of one Warner, at Springfield, under a contract made with her "that she should receive for her services $1.50 per week, that she should have a part of Sundays for herself, that if she went out on Sundays in the morning, she was to be back at three o'clock, and if she went in the evening, she was to be back at ten o'clock, that she was to have two evenings each week to go where she pleased, and that her wages were to be paid her once a month, and she was to keep a part to buy clothes for herself, and to give the rest to her

mother; " that upon these evenings and Sundays she was accustomed to go to the plaintiff's house, and to assist sometimes in the family, just as she saw fit and with her own assent; that the plaintiff required her to spend a part of the Sunday at home, while he was at church; that she used to cook the dinner on Sundays and do work about the house; and that all the sexual intercourse she ever had with the defendant occurred while she was living at Mr. Warner's, under this arrangement.

The plaintiff was allowed, against the defendant's objection, to introduce evidence tending to show that Mary Kennedy lived in the plaintiff's family and did work there for about two weeks, in September 1862, a short time before the birth of the child which was begotten by the defendant, and some months after she had completed her service at Mr. Warner's, and that the child was born in Washington in September 1862, and the plaintiff had no knowledge of his daughter's pregnancy until some time after its birth.

Mary Kennedy, who was the only witness regarding the acts of intercourse between her and the defendant, testified that he had connection with her three times in January and February 1862; that each of these times he " forced " her; and that she did not remember any other times when he had connection with her.

The plaintiff contended that the defendant had been absent from the Commonwealth long enough to take the case out of the statute of limitations. The only evidence on that point came from Mary Kennedy, and was as follows: " I came back from Washington to Springfield about two years after the child was born. The defendant was here at that time. Afterwards I knew the defendant was not here; I cannot tell how long he stayed away, nor when he left. I had a talk with him about a week before our last trial," which was in the winter of 1871. " He said he had been out West, and that he was sorry he returned, for he could have done better out there. I should think he was gone away two, three or four years; I could not exactly say how long."

The defendant requested the judge to rule " that upon the evidence the action could not be maintained, because there was no

relation of master and servant between the plaintiff and his daughter; that if she was out at service with another person, that would preclude the plaintiff from recovering, although the contract was for his benefit; that if the plaintiff required service of her on Sundays, it did not affect the case if she was in fact under another master; that if the jury believed that the sexual intercourse relied upon was accomplished by force and violence, this action could not be maintained; that under the evidence the offence was not seduction, but an assault and battery, and so was barred by the statute of limitations; that, for the same reason, the action could not be maintained under the trustee process; and that there was no evidence to take the case out of the statute of limitations."

The judge refused so to rule, and instructed the jury " that in order to maintain this action, the relation of master and servant must have existed between the plaintiff and his daughter at the time the defendant debauched her; but that if, by the contract with Warner, she was to have a part of Sundays and two nights in the week for herself, then her father would have the right to require her to serve him on those occasions, she being a minor, and if he did require it on such occasions, then the relation of master and servant existed sufficiently to entitle him to maintain this action; that it was immaterial if the defendant effected the criminal connection complained of forcibly, in the manner which Mary Kennedy testified to; that the plaintiff must satisfy them that the defendant had been absent from and resided out of the Commonwealth a sufficient length of time, so that the remaining time since the cause of action accrued, up to the commencement of this suit, would not exceed six years; and that there was evidence upon that point for their consideration."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*G. M. Stearns*, (*M. P. Knowlton* with him,) for the defendant.

*G. Wells*, (*N. A. Leonard* with him,) for the plaintiff.

AMES, J. In order to maintain an action of this description, the plaintiff is required to prove that the relation of master and servant between himself and his daughter existed, either in fact

or constructively, at the time of the seduction. According to numerous decisions of the courts of New York, Pennsylvania, and some other states of our Union, this relation is sufficiently proved by evidence that the daughter was a minor, and that the father had a right to her services. Those decisions also lay down the rule that the effect of such evidence is not impaired by the fact, that, at the time of the injury, she was not living in her father's family, but was in the actual employment of another person It was held that such a fact would not justify the inference that the father had abandoned any of his paternal rights, unless the daughter had been actually bound out as an apprentice. In other words, the relation results constructively from his right to reclaim the custody of her person, from his responsibility for her education, and from his obligation to support her if she should become sick or disabled while so absent from her home. *Martin* v. *Payne*, 9 Johns. 387. *Nickleson* v. *Stryker*, 10 Johns. 115. *Clark* v. *Fitch*, 2 Wend. 459. *Bartley* v. *Richtmyer*, 4 Comst. 38. *Mulvehall* v. *Millward*, 1 Kern. 343. *Hornketh* v. *Barr*, 8 S. & R. 36. *Vanhorn* v. *Freeman*, 1 Halst. 322. *Mercer* v. *Walmsley*, 5 Har. & J. 27. With regard to her earnings, the privilege allowed to her to retain a portion of them in her own hands, in order to purchase clothing, must be considered as permissive only. There is nothing in the report inconsistent with an absolute right on the part of the father to terminate her engagement with her employer, and to require her at any moment to return to his own house. As against the excepting party, it is to be presumed that he offered to prove every fact that he was in a condition to prove, having a tendency to disprove the existence of the relation of master and servant between the plaintiff and his daughter. There having been no attempt to prove the contrary, it may be assumed that she had never been emancipated from the paternal control, and that her father was entitled to her earnings, so that she was *de jure* his servant. So far as the American authorities go, therefore, the plaintiff has done all that was incumbent upon him in this part of the case.

The rule adopted in the English courts apparently requires that the relation of master and servant should be proved with

greater strictness where the daughter does not reside under the paternal roof ; and according to *Thompson* v. *Ross*, 5 H. & N. 16, the action cannot be maintained if, at the time of the seduction, she was a domestic servant in a family other than that of her father. But it is well settled, even under the English rule, that the amount and value of the actual service to the father are of but little importance, and that any service, however slight, is sufficient. *Bennett* v. *Allcott*, 2 T. R. 166. It is enough if the father had a right to her services, and if some service was rendered. The case finds that he was entitled to her services a portion of every week, and that she was actually employed on Sundays at his house, in cooking and other domestic work, upon his requirement. If so, her entire service did not belong to her employer, Warner, and the action could well be maintained even under the English decisions. See judgment of Bramwell, B., in *Thompson* v. *Ross, ubi supra.*

The evidence which was admitted under objection, as to the fact that the daughter lived and rendered services in her father's family, for about two weeks, several months after the seduction, although perhaps open to objection as immaterial, cannot have had any effect upon the verdict, and does not have any bearing upon the plaintiff's right to recover. The jury were instructed that the relation must be proved to have existed at the time of the seduction.

As the gist of the action is the debauching of the daughter, and the consequent supposed or actual loss of her services, it is immaterial to the plaintiff's claim under what special circumstances the injury was wrought, or whether it was accompanied with force and violence or not. The action will lie, although trespass *vi et armis* might have been sustained. It would be no defence, that the crime was rape, and not seduction. *Furman* v *Applegate*, 3 Zab. 28. The father in such cases may always seek his remedy in an action on the case. *Bennett* v. *Allcott, ubi supra. Chamberlain* v. *Hazelwood*, 5 M. & W. 515. 2 Greenl Ev. § 571.

As to the statute of limitations, there was evidence to the effect that the defendant had been absent from the state for years

after the cause of action accrued. The number of years was **not** stated by the witness with precision, the expression being two, three or four years. As the defendant himself must have had knowledge on this subject, and made no attempt to show what the exact number of years was, it was evidence proper to be laid before the jury. It is impossible to say that there was no evidence on the subject.           *Exceptions overruled.*